**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

DONNA K. SOUTTER,
*For herself and on behalf of all*
*Similarly situated individuals*,

                                        Plaintiff,

v.                                                              Civil Action No.  3:10-cv-00514-HEH

TRANS UNION, LLC,

                                        Defendant.

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

Plaintiff Donna K. Soutter ("Plaintiff"), on behalf of herself and all others similarly situated (the "Class" as further defined below). Plaintiff entered into a Class Action Settlement ("Settlement Agreement" or "Agreement") with Defendant Trans Union, LLC ("Defendant" and, together with Plaintiff, the "Parties") and now seeks the Court's preliminary approval of the Settlement.  In support of the motion for an Order preliminarily approving the class action settlement, scheduling a fairness hearing, certifying the proposed settlement class for purposes of the proposed class settlement, appointing class counsel, and approving the form and manner of notice proposed to be sent to all members of the settlement classes, the Plaintiff submits this memorandum.

## I.   INTRODUCTION

On July 26, 2008, Plaintiff Donna K. Soutter filed a Complaint in the above-captioned class action (the "Lawsuit"), asserting class claims against Defendant for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. More specifically, this case arises under 15 U.S.C. § 1681e(b) of the FCRA, which provides in relevant part:

Whenever a consumer reporting agency prepares a consumer report it shall follow

reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b). Plaintiff Donna Soutter alleged that Trans Union had a uniform policy of including Virginia state-court judgments in the consumer reports it prepares and sells, and listing the judgments as unpaid, even though its records do not contain information on the current status of those judgments, any of which may have been satisfied, vacated or appealed since the date Trans Union last received the data. As a result, a class of approximately 159,000 consumers had an inaccurate consumer report issued about them by Trans Union; each of these consumer reports showed an unpaid judgment when in fact the court records showed that the judgment had been satisfied, vacated or appealed at least thirty days before Trans Union's report was prepared.

Although this case followed, and was stayed for a period because of the pending appeal of a similar case against Equifax Information Services, LLC[1], the Parties in this action have litigated independently of the Equifax case. The Parties have served and conducted both informal and formal discovery. They have examined and defended the claims as they uniquely relate to Trans Union.

Trans Union vigorously denied all claims asserted against it in the action and Amended Complaint. It contended that its past and current procedures with respect to collecting and reporting public records, and handling disputes relating thereto, were reasonable and compliant with the FCRA. Trans Union also opposed class certification. That later obstacle became a greater defense leverage when the United States Court of Appeals for the Fourth Circuit reversed

---

[1] *Donna K. Soutter, et al. v. Equifax Information Services, LLC*, Civil Action No.: 3:10-cv107 (E.D.Va.)(J. Payne).

the grant of class certification in the Equifax matter because the breadth of the class definition covered atypical time periods.[2]

Plaintiff, Class Counsel, Trans Union and Trans Union's Counsel engaged in extensive, good faith arms-length negotiations under the supervision of U.S. Magistrate Judge M. Hannah Lauck, including by participating in two in person private mediations, one supervised by the Hon. Wayne Anderson (Ret.)[3], JAMS in Chicago, and the other supervised by the Hon. Stanley Birch (Ret.)[4], JAMS, in Atlanta.  The negotiations and mediation sessions finally resulted in an agreement on the principal terms of the settlement.   Plaintiff and her counsel have concluded that the settlement now brokered before Judge Birch is fair, reasonable, adequate, and in the best interests of the Class based upon their investigation and discovery, and taking into account the sharply contested issues involved, the uncertainty and cost of further prosecution of the Action, and the substantial benefits to be received by the Settlement Class pursuant to the Settlement Agreement.

Pursuant to Fed. R. Civ. P. 23, the Plaintiff now seeks preliminary approval of the proposed class action settlement of the FCRA claims. Specifically, the Plaintiff requests that the Court preliminarily certify the proposed class and the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order").

## II.  PROPOSED CLASS ACTION SETTLEMENT

### A.      Settlement Terms

---

[2]  *Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260 (4th Cir. 2012).  The Plaintiff's narrowed Motion for Class Certification has now been briefed and is pending before Senior District Court Judge Payne.
[3]  Judge Anderson retired from the United States District Court for the Northern District of Illinois.
[4]  Judge Birch retired from the United States Court of Appeals for the Eleventh Circuit.

The Parties settled the FCRA claims on a class basis ("Proposed Settlement") upon these basic terms:

1. Trans Union will make the correction of all credit files for the approximately 159,000 class members by using the data the Parties have now obtained directly from the Executive Secretary for the Supreme Court of Virginia;

2. All class members will be eligible to submit a claim for a cash payment from the $1.4 million settlement fund.  All consumers may claim and obtain a pro rata payment that is increased if the consumer had previously disputed the reporting inaccuracy and if the reporting correction materially increases the class member's credit score;

3. All class members are entitled to six months of Trans Union's primary credit monitoring service that it regularly sells for $14.95 a month;

4. To accommodate the possibility that some consumers may claim larger than typical actual damages, the Settlement permits class members to participate in the settlement to cause the correction of their credit file and to receive the Trans Union credit monitoring product, but still reserve and thus exclude their individual actual damage claims for later negotiation and /or litigation;

5. The Settlement is narrowly tailored to settle and release only claims related to the inaccurate Virginia civil judgments; and

6. The cost of Notice and Administration and Plaintiff's counsel's attorneys' fees will be paid from the settlement fund.

**A.  Certification of a Fed. R. Civ. P. 23(b)(3) Settlement Class.**

For settlement purposes only, the Plaintiffs seeks preliminary certification of a Fed. R. Civ. P. 23(b)(3) class as follows:

> All consumers in the United States who, between July 26, 2008, and the date of preliminary approval of the Settlement, had a hard inquiry on their Trans Union File resulting in the delivery of a Trans Union consumer report that reflected an unsatisfied Virginia General District Court or Virginia Circuit Court civil judgment, if at least 31 days prior to delivery of the consumer report, and on the date of delivery of the consumer report, such judgment had been satisfied, vacated or dismissed, as shown by the VSC Master File.

Ex. 1, ¶ 2.37.

### C.  Third-Party Settlement Administrator

Plaintiff's counsel asks the Court to appoint and hire a third party class action settlement administrator, McGladrey LLP (the "Settlement Administrator"), to oversee the administration of the settlement and the notification to Class Members. All costs and expenses for the Settlement Administrator shall be paid from the Settlement Fund, established pursuant to the Settlement Agreement ¶ 4.3. The Settlement Administrator will be responsible for mailing the approved class action notices and claim forms to the Class Members. A separate checking account will be established by the Settlement Administrator for purposes of depositing the settlement funds after payment of all settlement costs for the sole purpose of issuing settlement checks to Class Members who submit claims.  If this Class Action Settlement receives final approval, the Class Administrator will verify that the settlement checks were mailed to the Class Members who made a valid claim.

### D.  Mailed Notice

Trans Union is responsible for providing the last known address and identity of each Class Member, and other related information regarding the Virginia court judgment in the Class Member's credit reporting history. Before sending the written notices to the Class Members, the Class Administrator will, as necessary, further research and update the Class Members' addresses. As part of this process, the Parties agreed to a protective order permitting the

disclosure of Class Member data and requiring the Settlement Administrator and Class Counsel to keep the Class Member information confidential.  After completing the address updating process, in the manner prescribed in the Settlement Agreement, the Settlement Administrator will send, via First Class U.S. mail, the Court-approved written notice of the settlement to each Class Member at his or her last known valid address.  If any notice is returned with a new address, the notice will be re-mailed by the Settlement Administrator to the new address. The notice shall be in substantially the form attached to the Settlement Agreement. In addition to the Mail Notice plan, Class Counsel will establish a Settlement Website, either independently or with the assistance of the Settlement Administrator, containing relevant information such as the Settlement Agreement, the Mail Notice, Claim Form, Preliminary Approval Order, and contact information for the Settlement Administrator.  Ex. 1, ¶ 7.3.

**E.  Class Counsel's Fees, Costs, and Expenses.**

Defendant agreed not to contest Plaintiff's counsel's motion for attorneys' fees and expenses as the successful party in the litigation, subject to court approval and for settlement purposes only. Plaintiff may also ask the Court for a Service award. Ex.1,  ¶ 5.1.

## III.   ARGUMENT

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'"  *Id.*  "For in such cases, 'the class-action device saves the resources of both the

courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" *Id.*

There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation. *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (there is an "especially strong" presumption in favor of voluntary settlements in "class actions . . . where substantial judicial resources can be conserved by avoiding formal litigation."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (same); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (same); 2 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). This includes the "strong initial presumption" in class action cases "that the compromise is fair and reasonable." *In re MicroStrategy*, 148 F. Supp. 2d at 663 (internal quotation marks omitted). Proposed settlements must, nevertheless, satisfy the requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592 (1997).

Rule 23 "states that '[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 599 U.S. 393, 398 (2010) (quoting Fed. R. Civ. P. 23). Each condition is addressed below.

## A. <u>The Rule 23(a) Requirements are Satisfied</u>

Rule 23(a) sets forth four basic requirements for any class action—numerosity, commonality, typicality, and adequacy. This Lawsuit satisfies the Rule 23(a) prerequisites.

Each Rule 23(a) factor is considered in turn below.

### 1.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)). However, where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient); *cf. Kennedy v. Va. Polytechnic Inst. & State Univ.*, 2010 U.S. Dist. LEXIS 101491, at *6 (W.D. Va. Sept. 23, 2010) ("it is exceedingly rare to certify classes with less than 25 members").

The numerosity requirement is met here. There are approximately 159,000 Class Members, including the named Plaintiff as class representative. Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) (finding that a class of 1,400 members "easily satisfied Rule 23(a)(1)'s numerosity requirement").

### 2.    Commonality

Rule 23(a)(2) requires that the court find that "that there are questions of law or fact common to the class." "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO,* 212 F.R.D. 320, 322 (E.D. Va. 2003). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, ___

U.S. ___, 131 S. Ct. 2541, 2551 (2011) (quoting *Falcon*, 457 U.S. at 157).  Moreover, the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Jeffreys*, 212 F.R.D. at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (Factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory.").

This case involves common questions of fact and law, particularly where the Named Plaintiff and potential Class Members were subject to the same manner of judgment disposition collection and credit reporting by Trans Union that allegedly violated the FCRA. The putative class claims stem from Plaintiff's allegations that the same procedures and thus Rule 23's low commonality threshold is satisfied for the Class Members.  In other words, the putative class claims are legally and factually identical and the commonality prong of Rule 23 is satisfied.

### 3.      Typicality

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. and Power Co.,* 217 F.R.D. 201, 212 (E.D. Va. 2003).  "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as

the claims of the class members." *Jeffreys*, 212 F.R.D. at 322.  Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 131 S. Ct. at 2551 n.5.

Donna Soutter's claim is typical of those of other class members. She, as every class member, alleges a violation of the same FCRA provision, 15 U.S.C. §1681e(b). This claim challenges the credit reporting procedures of Trans Union and does not depend on any individualized facts. Trans Union obtains all of its Virginia judgment records under the same contract from the same vendor. During the period at issue in this case, those records were gathered from a single source—the Virginia Supreme Court's website. Trans Union's notice and knowledge of the challenged reporting problem is the same for Plaintiff as for the Class. Plaintiff's proof of each of these elements in her own case will advance the class claims in proportionate degree.[5]

### 4.      Adequacy of Representation

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys,* 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing

---

[5] Typicality is the basis for the Fourth Circuit reversal in the Equifax case.  However, the posture at this stage is of course different—settlement.   But the facts are also alleged to be different as to Trans Union versus Equifax.  Regardless, the evidence obtained in the Equifax case after the Fourth Circuit ruling have addressed the earlier dispute as to typicality.  *See, e.g.*, *Soutter v. Equifax Information Servs., LLC*., Civ. No. 3:10cv107 (E.D. Va.), Am. Mot. to Certify Class Docket No. 131; Mem. in Supp. of Am. Mot. to Certify Class, Docket No. 132.

*Broussard v. Meineke Disc. Muffler Shops,* 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. Plaintiff understands the obligations of a class representative, has adequately represented the interests of the putative class, and has retained experienced counsel who have handled numerous consumer-protection class actions. Plaintiff also aligned herself with Counsel who are qualified to prosecute this case in favor of the Class. Plaintiff's Counsel has effectively handled numerous consumer-protection and complex class actions, typically as lead or co-lead counsel. *Soutter v. Equifax Info. Servs., LLC*, 2011 U.S. Dist. LEXIS 34267, at *28 (E.D. Va. Mar. 30, 2011) (stating "the Court finds that Soutter's counsel [Leonard A. Bennett] is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as Class Counsel in numerous cases."). *See* Decl. of Leonard Bennett. (attached as Exhibit 2).

Plaintiff has no antagonistic or conflicting interests with the Class Members. Both Plaintiff and the Class Members seek statutory damages for Defendant's alleged unlawful actions. Plaintiff is a member of the Settlement Class. Considering the identity of claims, there is no potential for conflicting interests in this action. Accordingly, the class is adequately represented to meet the requirements under Rule 23.

**B.      The Rule 23(b) Requirements are Satisfied.**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Here, Plaintiff seeks certification pursuant to Rule 23(b)(3).

**1.  The Class Should Be Certified under Rule 23(b)(3)**

Rule 23(b)(3) actions may be permitted in "situations in which class-action treatment is not as clearly called for, but may nevertheless be convenient and desirable." *Id.* at 615 (internal quotation marks omitted).  To certify such a class, the court must find that "the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3) (emphasis added).  Preliminary certification of the proposed class is appropriate under Rule 23(b)(3).  The predominance and superiority factors are addressed below.

### i.     *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3).  In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Moreover, the Fourth Circuit has held that, even when present, individualized damage determinations may not preclude the conclusion that common questions of law and fact predominate. *See, e.g.*, *Ward v. Dixie Nat. Life. Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010); *Gunnells Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003).  Instead, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  7A Charles Alan Wright, Arthur R. Miller

& Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986). In this case, any of the claims with individualized damages or other factors were settled individually separate and apart from the FCRA class claims.

A common nucleus of facts and potential legal remedies dominate this litigation. The claims of the Class Representative and Class Members are identical.  As this Court recently held in granting the parties' joint motion for class certification and preliminary approval of a class action settlement in *Mauro*:

> In this matter, all of the proposed class members' claims arise from Defendants' act of mailing the dunning letter at issue.  And as already established, their legal theories are identical: Each class member's potential claim turns on the single question of whether Defendants' Verification Notice violated the FDCPA. That shared issue clearly predominates over potential peripheral matters, making collective resolution sensible in this case.

2011 U.S. Dist. LEXIS 127173, at *10.

Plaintiff's and the putative class members' claims are identical, and all issues are subject to the same proof.  Proof of the class claims will leave nothing for Plaintiff to prove individually. Class-wide claims predominate over any individual claims.

ii.    ***Superiority***

The superiority inquiry requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). When determining whether a class action is superior, the Court should consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or  undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Jeffreys,* 212 F.R.D. at 323; *see also* Fed. R. Civ. P. 23(b)(3)(A)-(D).

"In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff.  Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." Advisory Committee's Note to 1996 Amendment to Rule 23.  In other words, a class action is superior when potential damages may be too insignificant to provide class members with incentive to pursue a claim individually. Thus, the class mechanism permits a large group of claimants to have their claims adjudicated in a single lawsuit.  For example, in *Quiroz v. Revenue Production Management, Inc.*, 252 F.R.D. 438 (N.D. Ill. 2008), the defendant collection agency engaged in standardized conduct by sending allegedly deceptive form letters to many consumers. Each individual consumer's claim under the FDCPA would have been too small to vindicate through an individual suit, so a class action was found to be the superior method to resolve these claims.

Similarly, FCRA statutory damage cases, like this one, are ideally suited for class certification, because of the uniform, but limited, recoveries sought under a complex statute. *See Bush v. Calloway Consol. Group River City, Inc.*, 2012 WL 1016871, at *11 (M.D. Fla. March 26, 2012) ("Courts routinely find class resolution superior in consumer protection actions . . . ."); *Larsen v. JBC Legal Group, P.C.*, 2006 U.S. Dist. LEXIS 42474, at *20 (E.D.N.Y. June 23, 2006) ("courts routinely certify plaintiffs' classes under Rule 23(b)(3) in FDCPA cases[.]"). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Bush*, 2012 WL 1016871, at *11 (quoting *Amchem*, 521 U.S. at 617).  Rule 23(b)(3) was designed for situations such as this, where the amount in controversy for any individual claimant is small, but injury is substantial in the aggregate.

The alternative mechanism, permitting individual lawsuits for a small statutory penalty,

would be costly and duplicative. Through the class action procedure, these common claims can be brought in one proceeding, thereby eliminating unnecessary duplication, preserving limited judicial resources, and achieving economies of time, effort, and expense.

## C.   The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate

Although pretrial settlement of class actions is favored, "Rule 23(e) provides that 'a class action shall not be dismissed without the approval of the court." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (citations omitted). "To this end, 'the role of the Court reviewing the proposed settlement of a class action under Fed. R. Civ. P. 23(e) is to assure that the procedures followed meet the requirements of the Rule and . . . to examine the settlement for fairness and adequacy.'" *In re MicroStrategy*, 148 F. Supp. 2d at 663.

"[T]he Fourth Circuit [has] adopted a bifurcated analysis, separating the inquiry into a settlement's 'fairness' from the inquiry into a settlement's 'adequacy.'" *Id.* These safeguards ensure that "a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem*, 521 U.S. at 621; *see also In re Jiffy Lube*, 927 F.2d at 158 ("The primary concern addressed by Rule 23(e) is the protection of class members who rights may not have been given adequate consideration during the settlement negotiations."). In this case, each set of factors weighs in favor of approving the Settlement.

### 1.  The Proposed Settlement is Fair.

When evaluating the fairness of a settlement, the Court must evaluate the settlement against the following criteria: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *In re Jiffy Lube*, 927 F.2d at 159. The fairness inquiry ensures that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Id.* These factors point persuasively to the conclusion that

the settlement here is fair.

The settlement was reached after the Parties engaged in informal and formal written discovery as well as frequent communications regarding the merits of the case. Further, the systems and procedures of Trans Union's public records vendor, LexisNexis, were fully discovered through written document requests and interrogatories, third party subpoenas and numerous depositions in the related Equifax case.

The parties mediated the claims both privately and with the assistance of United States Magistrate Judge Lacuk. The settlement was reached at arms-length after settlement negotiations in Chicago and Atlanta, and by countless written and telephonic exchanges, with literally years of back-and-forth negotiations and both sides making substantial concessions. The final divide was bridged upon the hands-on intervention of mediator Judge Birch, one of the few retired United States Court of Appeals judges who will accept a private mediation.

Pursuant to the settlement, the putative class members are guaranteed a substantial recovery with a strong combination of cash payments, credit reporting corrections and credit monitoring for six months. The Settlement is narrowly drawn to limit the claim release to matters regarding the Virginia civil judgments. Other public record FCRA claims are expressly excluded. And in the event a class member asserts unusually large actual damages, he or she may expressly reserve and preserve those claims while still participating in the primary settlement benefits. Class Counsel are experienced class-action attorneys who specialize in consumer protection-type cases, and have determined settlement by way of this Agreement is in the Parties' best interests. *See Soutter*, 2011 U.S. Dist. LEXIS 34267, at *28.

Considering the risks associated with litigating this matter, Defendant's defenses to Plaintiff's claims, the meaningful settlement discussions, and approval of the proposed

compromise by a retired U.S. Court of Appeals Judge as mediator, the proposed settlement is fair and appropriate for approval. *See S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law).

**2.      The Proposed Settlement is Adequate.**

In assessing the adequacy of the settlement, the Court should look to the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159.

While it is too early to address the last factor, *i.e.*, the reaction of the Class Members to the proposed settlement, application of the other relevant factors confirms that the proposed settlement is adequate and should be preliminarily approved.

**i.      *The Relative Strength of the Plaintiff's Case and the Difficulty in Proving Liability.***

As noted, Defendant has disputed Plaintiff's claim since the inception of this case and has raised a number of defenses to Plaintiff's class claims. The Defendant believes that it would succeed on the Plaintiff's request to certify this class as well.  Given the Parties' arguments, the fact that some of the above issues are matters of first impression in Virginia and in the federal courts, the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery

through continued litigation, the proposed settlement is adequate.

### ii.      The Anticipated Duration and Expense of Additional Litigation

Aside from the potential that either side will lose at trial, the Parties anticipate incurring substantial additional costs in pursuing this litigation further.   The level of additional costs would significantly increase as Plaintiff began her preparations for filing for class certification and completing discovery. Thus, the likelihood of substantial future costs favors approving the proposed settlement.

### iii.      The Solvency of the Defendant and the Likelihood of Recovery

Defendant is solvent and could pay a reasonable judgment.

### iv.      The Proposed Class Notice is the Best Notice Practicable under the Circumstances

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  Pursuant to Rule 23(c)(2)(B):

> The notice [for Rule 23(b)(3) classes] must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).

Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" the proposed settlement.  Fed. R. Civ. P. 23(e)(1).

Individual notice is being provided directly to each Class Member.   In addition, Class Counsel will establish a website with relevant information concerning the case and the Agreement.  Before sending the written notice, Defendant and the Settlement Administrator will confirm and, if necessary, update the addresses for the Class Members through the standard methodology the administrator currently uses to update addresses so as to ensure the

last known address for each Class Member is used.

The Parties propose that any Class Member who desires to be excluded from the class send a written request for exclusion to the class administrator with a postmark date no later than the date to file written objections.  The administrator shall provide a list of the names of each Class Member who submitted a timely exclusion to Class Counsel after the deadline passes, and the parties shall include a copy of the list along with the Motion for Final Approval of Class Action Settlement.  Any Class Member who submits a valid and timely request for exclusion shall not be bound by the terms of this Agreement. Further, any Class Member who desires to enter an appearance in this case may do so.

The Class Members also have the opportunity to object to the proposed settlement.  Any Class Member who intends to object to the fairness of this settlement must file a written objection with the Court after the Notice is mailed to the Class Members, and provide a copy to Class Counsel and counsel for Defendant. The class members will be notified that they may enter an appearance through an attorney at their own expense if the member so desires.

The proposed notice is appropriate and complies with both Rule 23(c)(2)(B) and (e)(1). The notice contains all of the required Rule 23 information and properly advises the Class Members of their rights. The proposed method for notifying the Class Members thus satisfies both Rule 23 and due process and constitutes the best notice practicable under the circumstances.

## II. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant the consent motion and enter the Preliminary Approval Order:

(1) preliminarily approving a proposed class settlement,

(2) scheduling a fairness hearing,

(3) certifying the Settlement Class for purposes of the proposed class settlement,

(4) appointing Class Counsel, and

(5) approving the form and manner of notice proposed to be sent to all members of the

Settlement Class.

Respectfully submitted,
**DONNA K. SOUTTER,**
*For herself and on behalf of all*
*Similarly situated individuals*,

By: _____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail:  lenbennett@clalegal.com

Susan M. Rotkis
VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail:  srotkis@clalegal.com

Janelle Mason Mikac
VSB# 82389
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Phone: (703) 273-7770
Fax: (888) 892-3513
E-mail: janelle@clalegal.com

*Attorneys for Plaintiff and the Class Members*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 5th day of December, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Grant E. Kronenberg
Michael Robert Ward
Morris & Morris PC
11 South 12th Street
5th Floor
PO Box 30
Richmond, VA 23218
E-mail: gkronenberg@morrismorris.com
Email: mward@morrismorris.com

Matthew Kasey Ratliff
Strasberger & Price, LLP
901 Main Street, Suite 4400
Dallas, TX 75202
E-mail:  kasey.ratliff@strasburger.com

Paul Lee Myers
Strasberger & Price, LLP
2801 Network Boulevard
Suite 600, Frisco, TX 75034
E-mail:  paul.myers@strasburger.com

Stephen Newman
Strook, Strook & Lavan, LLP
2029 Century Park East
Suite 1600
Los Angeles, CA 90067-3086
E-mail:  snewman@strook.com

                                        /s/
                                  Leonard A. Bennett, Esq.
                                  VSB #37523
                                  Attorney for Plaintiff
                                  CONSUMER LITIGATION ASSOCIATES, P.C.
                                  763 J. Clyde Morris Boulevard, Suite 1-A
                                  Newport News, Virginia 23601
                                  (757) 930-3660 - Telephone
                                  (757) 930-3662 – Facsimile
                                  E-mail:  lenbennett@clalegal.com